# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|                                          |   |
|------------------------------------------|---|
| SUZANNE LEWIS,                           | ) |
|     Plaintiff,       | ) |
| v.                                       | ) Civil Action No. 18-11947-DJC |
| WALT DISNEY PARKS & RESORTS U.S., INC. et al., | ) |
|     Defendants.      | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                              **April 5, 2019**

## I. Introduction

This case arises out of a fall Plaintiff Suzanne Lewis ("Lewis") suffered on April 19, 2017 at the Lake Buena Vista Resort in Orlando, Florida. Lewis has filed this lawsuit against Walt Disney Parks & Resorts U.S., Inc. ("Disney") and American Automobile Insurance Company ("AAIC") alleging negligent maintenance of premises (Count I) and negligence (Count II) against Disney and breach of contract and unfair and deceptive trade and settlement practices under Mass. Gen. L. c. 93A against AAIC. D. 1. Disney has moved to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the Middle District of Florida. D. 15. AAIC has moved to sever itself from the claims against Disney and to stay all proceedings against AAIC pending resolution of the claims against Disney. D. 11. For the reasons set forth

1

below, the Court ALLOWS Disney's motion to dismiss, D. 15, but DENIES AAIC's motion, D. 11, both without prejudice.

## II. Standard of Review

In ruling on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, a district court must apply the prima facie standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, to meet her burden of establishing that the Court has personal jurisdiction over the defendants pursuant to Fed. R. Civ. P. 12(b)(2), Lewis must "demonstrate the existence of every fact required to satisfy both the forum's long arm statute and the Due Process Clause of the Constitution." Swiss Am. Bank, 274 F.3d at 618 (citation and quotations omitted). This showing "must be based upon evidence of specific facts set forth in the record" and "the plaintiff must go beyond the pleadings and make affirmative proof." Id. (internal quotations omitted). The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster–N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The Court will then "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Id. Notwithstanding the liberality of this approach, the court will not "credit conclusory allegations or draw farfetched inferences." Ticketmaster, 26 F.3d at 203.

As to a motion to dismiss for improper venue, the Court is "not required to determine the best venue, merely a proper venue." Astro–Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009). The plaintiff bears the burden to establish that the venue she has selected is proper.

2

See, e.g., Sindi v. El-Moslimany, No. 13-cv-10798-IT, 2014 WL 6893537, at *11 (D. Mass. Dec. 5, 2014) (quoting Transamerica Corp. v. Trans-Am Leasing Corp., 670 F. Supp. 1089, 1090 (D. Mass. 1987)); Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979). In assessing the plaintiff's showing, the Court may accept all well-pleaded allegations as true, unless they are contradicted by the defendant's affidavits. See Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts, 898 F. Supp. 2d 301, 317 (D. Mass. 2012) (quoting Turnley v. Banc of Am. Inv. Servs., Inc., 576 F. Supp. 2d 204, 211 (D. Mass. 2008)).

### III. Factual Allegations

The following facts are taken from Lewis's complaint, D. 1, Disney's uncontroverted, sworn affidavit in support of its motion to dismiss, D. 17, and AAIC's first response to Disney's motion to dismiss, D. 21. Plaintiff Lewis is a resident of the Commonwealth of Massachusetts. D. 1 at ¶ 1. Defendant Disney is a Florida corporation with its principal place of business in Lake Buena Vista, Florida. D. 17 at ¶ 3. Defendant AAIC is a Missouri corporation with its principal place of business in Missouri. D. 21 at 2. Defendant Disney has, at all times relevant to this action, owned and operated the Lake Buena Vista Resort in Orlando, Florida. D. 1 at ¶ 2. Disney is not registered to do business in Massachusetts as a foreign corporation, has no offices here, employs no individuals here, does not own or lease any property here and has no assets or bank accounts in the Commonwealth. D. 17 at ¶¶ 5-12.

On April 19, 2017, Lewis was operating her motorized scooter at the Lake Buena Vista Resort when she drove over a small staircase, which caused her to fall from the scooter, sustaining serious injuries to her knee, leg and ankle. D. 1 at ¶ 4. Lewis has incurred medical costs as a result

of her injuries as well as "severe pain of body and mind" and an extended period of disability. D. 1 at ¶ 6.

AAIC is Disney's insurer for Lewis's claims related to her scooter accident. D. 1 at ¶ 9. On May 21, 2018, Lewis sent a demand letter to AAIC in accordance with Mass. Gen. L. c. 93A. D. 1-1.

## IV. Procedural History

On September 14, 2018, Lewis filed her complaint in this case. D. 1. AAIC moved to sever itself from the proceedings against Disney and to stay proceedings against AAIC. D. 11. Disney then moved to dismiss or, in the alternative, to transfer the case to the Middle District of Florida. D. 15. This Court heard argument on the motions and took the motions under advisement. D. 26.

## V. Discussion

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (citations and internal quotation marks omitted). Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts' long-arm statute and the Constitution. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). Here, "[b]ecause the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017).

If the statutory burden is met, constitutional due process requires that a non-resident defendant "ha[s] certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). This constitutional guarantee of due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985) (quoting Int'l Shoe Co., 326 U.S. at 319). A court may exercise two types of personal jurisdiction: general and specific, Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 30–31 (1st Cir. 2010), which the Court will address in turn following the statutory inquiry.

A. **Personal Jurisdiction**

1. *Long-Arm Statute*

Lewis has not alleged sufficient facts to satisfy the Massachusetts long-arm statute, Mass. Gen. L. c. 223A, § 3. Section 3(a) of the long-arm statute, which gives personal jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth," is arguably relevant here. "[F]or jurisdiction to exist pursuant to § 3(a), therefore, the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001) (citing Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)). As to the first prong of this test, courts have interpreted this provision broadly to cover instances in which a defendant engages in "the purposeful and successful solicitation of business from residents of the Commonwealth." Tatro, 416 Mass. at 767. The second prong requires a showing

5

of "but for" causation. Id. at 771 (concluding that Section 3(a) had been satisfied where "[b]ut for the defendant's solicitation of business in Massachusetts, and its agreement to provide the plaintiff with hotel accommodations in Anaheim, California, the plaintiff would not have been injured in a room of the hotel"). In at least two personal injury cases, courts in this district have found that contacts between Walt Disney entities and Massachusetts plaintiffs satisfied the "transacting any business" provision of the long-arm statute. See Morse v. Walt Disney World Co., 675 F. Supp. 42, 43 (D. Mass. 1987) (noting that Disney sent information to travel agents in the Commonwealth, accepted reservations and payments from plaintiff here and also sent correspondence to plaintiffs' Massachusetts home sufficient to constitute "transacting any business" here, but concluding, prior to the Tatro, that plaintiff's cause of action did not arise from the company's in-state activities); Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001) (noting that "plaintiffs' pleadings identify specific contacts between the plaintiffs and Disney similar to those deemed sufficient to constitute transacting business in Morse" and that "any advertising activity by Disney [and its agent] in Massachusetts merely supplements the more specific contacts between Disney/[its agent] and [plaintiff] and, applying Tatro, concluding that "but for" her contact of reserving her room, she would not have been injured such that Section 3(a) was met).

Unlike the plaintiffs in Morse and Sigros who alleged facts about Disney's conducting business in the Commonwealth, Lewis alleges no specific facts regarding Disney transacting any business in Massachusetts or the manner in which "but for" her contact with the company in the Commonwealth, she would not have been injured. Although Lewis makes reference to advertising in local television and radio and marketing by local agents in her opposition, D. 25 at 2, John McGowan, Vice President of Disney, provides uncontroverted testimony that Disney does not conduct business here, including the facts that Disney is not registered to do business in

Massachusetts as a foreign corporation, has no offices here, employs no individuals here, does not own or lease any property here and has no assets or bank accounts in the Commonwealth, D. 17 at ¶¶ 5-12. Lewis also argues that Disney derives significant revenue from Massachusetts residents and that all of her claims "are directly related to contacts between the Plaintiff, in Massachusetts, domiciled in Massachusetts, and [Disney] marketing its recreational packages in Massachusetts amongst other states." D. 25. Even crediting those contentions, which are neither alleged in the complaint or the subject of sworn affidavits or filings, there are no allegations or otherwise upon which this Court could rely to conclude that her claim arose from any transaction of business by Disney here.

Disney also points to §3(d) of the long-arm statute as the "only potentially relevant basis for jurisdiction," D. 16 at 5, but correctly points out the lack of facts to support that basis for jurisdiction. Section 3(d) of the long-arm statute applies when a defendant causes tortious injury in Massachusetts by an act or omission outside of Massachusetts. Lewis has not alleged that she suffered her injury in Massachusetts, but instead in Florida, at the site of the scooter incident and, therefore, §3(d) is inapplicable to the facts alleged here.

Even assuming *arguendo* that Lewis had satisfied the long-arm statute, the assertion of personal jurisdiction over Disney must also satisfy constitutional inquiry, which, as discussed below, it does not.

2. *General Jurisdiction*

For general jurisdiction, a foreign corporation, like Disney, must have "affiliations with the State" that "are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (U.S. 2011) (citing Int'l Shoe Co., 326 U.S. at 317). The Supreme Court has explained that "[w]ith respect to a

corporation, the place of incorporation and principal place of business" are the "paradigm" bases for general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). This paradigm is not implicated here where Disney is a foreign corporation with its principal place of business in Florida. The "plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." Id. at 31 (citations and quotations omitted).

While the Court must construe the facts "in the light most congenial to the plaintiff's jurisdictional claim," Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (citation and quotations omitted), Lewis's complaint and opposition to the pending motion to dismiss do not provide sufficient factual support for the assertion that Disney had sufficient contacts with Massachusetts to satisfy general jurisdiction. Lewis's allegations of Disney's "substantial" Massachusetts presence and revenue stream derived from Massachusetts residence along with bare assertions of Disney's local advertisements and employment of local agents, D. 25 at 2, are insufficient to establish substantial, continuous and systematic contacts such that general personal jurisdiction over a foreign corporation is appropriate. See Boily v. Walt Disney World Co., Civ. A. No. 08-4967 (SDW-MCA), 2009 WL 1228463, at *6 (D.N.J. May 1, 2009) (concluding that advertisements by Disney in the forum state "alone are insufficient to establish general jurisdiction over Walt Disney World"); Litman v. Walt Disney World Co., No. 01-CV-3891, 2002 WL 468707, at *7 (E.D. Pa. Mar. 26, 2002) (ruling that "national advertising not specifically directed at forum residents, without more, does not demonstrate continuous and systematic contacts to the forum state to provide the basis for general personal jurisdiction"); Capizzano v. Walt Disney World Co., 826 F. Supp. 53, 56 (D.R.I. 1993) (reasoning that corporation's payment of commission to local travel agents for booking local residents at its Florida hotels, its advertising in the Rhode Island market and its sale of admission tickets in Rhode Island store were not "continuous and

systematic" contacts necessary for general jurisdiction). Accordingly, there has not been a sufficient showing to exercise general jurisdiction over Disney.

3. *Specific Jurisdiction*

The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro–Med, 591 F.3d at 9 (citing N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 16 (1st Cir. 2009); N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The Court must find that all three are present to assert personal jurisdiction over a defendant. See id.

a. Relatedness

Lewis has not alleged sufficient facts to satisfy the relatedness prong as it pertains to Disney. The relatedness inquiry focuses on whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Newman v. Eur. Aeronautic Def. & Space Co. EADS N.V., Civ. A. No. 09-cv-10138-DJC, 2011 WL 2413792, at *4 (D. Mass. June 16, 2011) (alterations in original) (quoting Astro–Med, 591 F.3d at 9). This test "requires an 'arising from' analysis distinct from the 'but for' analysis undertaken under the Massachusetts long-arm statute." Sigros, 129 F. Supp. 2d at 67. This constitutional test is a "flexible, relaxed standard," id. (quoting Astro–Med, 591 F.3d at 9), but still requires a causal relationship between Lewis's claim and Disney's forum-related conduct, Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Although not precisely proximate cause, "due process demands something like a 'proximate cause' nexus." Id. (quoting Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)). "[T]he defendant's in-state conduct must form an important, or [at least] material, element of proof' in the plaintiff's case." Id. at 61 (alteration in original) (quoting United Elec., Radio & Mach. Workers

9

of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). Furthermore, a court may have specific jurisdiction in situations where there is only a single contact with the forum state, but that contact must be "meaningful." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 716 (1st Cir. 1996) (citing Burger King, 471 U.S. at 475 n.18; McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

Lewis has not alleged sufficient facts to demonstrate a nexus between any forum-related conduct by Disney and her claim. Lewis has not alleged any contacts between herself and Disney in Massachusetts outside of the previously cited conclusory allegation from her opposition that all of her claims are "directly related to contacts between the Plaintiff, in Massachusetts, domiciled in Massachusetts, and [Disney] marketing its recreational packages in Massachusetts amongst other states," D. 25. Both of Lewis's claims against Disney for negligent maintenance of premises and negligence arise from Disney's alleged failure to maintain the premises at the Lake Buena Vista Resort in Florida where Lewis was injured. That alleged failure of care occurred outside of Massachusetts. Lewis does not allege any conduct in Massachusetts that gives rise to either of her negligence claims.

By contrast, for example in Sigros, plaintiffs alleged injuries suffered at The Captain's Tavern, a restaurant at the Walt Disney Caribbean Beach Resort in Lake Buena Vista, Florida. Sigros, 129 F. Supp. 2d at 61. Plaintiffs, largely in the form of an affidavit from one of the plaintiff, provided evidence of the company's advertising in Massachusetts and their communications with Disney concerning hotel and restaurant accommodations such that plaintiffs' injuries were "reasonably foreseeable" to Disney as a result of such same. Id. at 67. The same or similar showing has not been made here.

b. Purposeful Availment

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state," Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 246 (D. Mass. 2012) (citing Sawtelle, 70 F.3d at 1391). Instead, the inquiry into purposeful availment focuses on acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co., 326 U.S. at 319).

Courts analyzing Disney's purposeful availment in other cases have found that the company's advertising in Massachusetts, often through its agents, satisfies the purposeful availment prong. See Rooney v. Walt Disney World Co., No. CIV.A. 02-12433-GAO, 2003 WL 22937728, at *4 (D. Mass. Nov. 25, 2003); Marsella v. Walt Disney World Co., Civ. A. No. 84-3045-W, 1985 WL 17364, at *2 (D. Mass. Sept. 30, 1985); Sigros, 129 F. Supp. 2d at 68. Here, however, as with the analysis above, Lewis has not made allegations that could support the notion that Disney has purposefully availed itself of the privilege of doing business in Massachusetts in such a way that Disney could reasonably expect to be brought into court in Massachusetts. Lewis maintains that Disney advertises in local television and radio markets and that Disney's revenue stream from Massachusetts residents is "substantial." D. 25. On this record, Lewis has failed to sustain a prima facie showing of purposeful availment where this lone contention does not rise to the level of allegations of conversations, advertisements, mailings and contacts from Disney to the forum state that courts have found met the requirements for purposeful availment in Rooney, Marsella, and Sigros, particularly in light of the uncontroverted record provided by Disney of its lack of presence in this forum.

c. Reasonableness

The reasonableness inquiry is based on a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67). "The purpose of the [G]estalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak, 94 F.3d at 717.

The Court concludes that exercising personal jurisdiction over Disney would not be reasonable. For the first factor to "have any significance, the defendant must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." Id. at 718 (citation and internal quotation marks omitted). At base, Disney contends that it is a non-Massachusetts corporation with no contacts in Massachusetts and their witnesses are located outside of Massachusetts. D. 16 at 12. Having to transport witnesses does not amount to a "special or unusual burden," beyond the "ordinary inconveniences of litigating an action in another state." Blu Homes, Inc. v. Kaufmann, Civ. A. No. 10-cv-11418-DJC, 2011 WL 3290362, at *5-6 (D. Mass. July 29, 2011) (concluding that the exercise of jurisdiction was reasonable despite defendant's argument that it would be "unfairly burdened by the expense and inconvenience of additional and resources lost in traveling to and from Massachusetts"). However, given the lack of showing regarding its presence in the Commonwealth, this factor weighs slightly more in Defendant's favor than it otherwise might.

Considering the second factor, "Massachusetts has a strong interest in protecting its citizens

from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims." Nowak, 94 F.3d at 718. The normally strong interest is weaker here, though, due to the lack of showing regarding Disney's presence in the Commonwealth. Accordingly, this factor somewhat favors Disney's arguments against the exercise of personal jurisdiction. The third factor weighs in favor of jurisdiction here because, as the First Circuit has made clear, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395 (citing Foster–Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 151 (1st Cir. 1995); Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994); Ticketmaster, 26 F.3d at 211). Massachusetts is clearly a more convenient forum for Lewis, a citizen of the Commonwealth. The fourth factor as to administration of justice is "[u]sually . . . a wash," Nowak, 94 F.3d at 718, and does not favor either forum here. As to the fifth factor, other than Lewis's choice of Massachusetts, the Commonwealth has no greater interest in this matter than Florida given the location of the incident, the evidence relating to same and the location of witnesses other than Lewis herself.

On this record, Lewis has failed to meet her burden to establish personal jurisdiction under both the Massachusetts long-arm statute and due process principles. See PREP Tours, Inc. v. Am. Youth Soccer Org., No. 17-1223, 2019 WL 126221, at *15 (1st Cir. Jan. 8, 2019) (concluding that "on this record—especially given that what is missing consists of information fully known to the in-forum party asserting jurisdiction" that plaintiff had failed to make showing for personal jurisdiction and affirming the district court's dismissal for lack of same).

**B. Lack of Venue**

Disney also contends that venue is improper. D. 16. If a case is brought in a federal district court where venue is improper, that court must either dismiss the case, or, if in the interest of

13

justice, transfer the case to a proper venue. 28 U.S.C. § 1406(a); see Fed. R. Civ. P. 12(b)(3). Even when a case is brought in a proper venue, a court may nonetheless transfer the case to any other proper venue for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a).

Given, however, the Court's ruling regarding the lack of personal jurisdiction over Disney, the Court need not reach Disney's arguments regarding improper venue or transfer of venue.

C. **Motion to Sever and Stay**

AAIC has moved to sever its claims from those asserted against Disney and/or stay proceedings against it pending the resolution of the claims against Disney. D. 11. Courts may "sever any claim against a party," Fed. R. Civ. P. 21, and "[t]he decision to separate parties or claims is a case management determination peculiarly within the discretion of the trial court." Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003) (citations and quotations omitted). The Court has broad discretion to stay discovery for "good cause shown" as part of pre-trial management. NPS, LLC v. Ambac Assurance Corp., 706 F. Supp. 2d 162, 167 (D. Mass. 2010) (citing Fed. R. Civ. P. 26(c)).

AAIC cites the "standard practice" of severing an unfair claim settlement claim and staying discovery from an insurer pending resolution of the underlying tort claim. D. 11 at 3 (citing Baram v. Chestnut Realty Corp., 2017- J-0377 (Mass. App. Ct. Sept. 21, 2017)). See, e.g., Sandoval v. RLI Ins. Co., Civ. A. No. 17-12054-JGD, 2017 WL 6447866, at *2 (D. Mass. Dec. 18, 2017) (quoting Monty v. Cenedella & OneBeacon Ins. Group, LLC, 2005 Mass. LEXIS 810, No. SJ–2004–0480, at *1 (Mass. Jan. 13, 2005)) (noting "'[d]iscovery into and trial of the unfair claim settlement practices claim prior to trial of the underlying tort claim is . . . approaching the two

14

claims in the wrong order' and 'creates a host of problems, in particular allowing discovery of issues that would, with respect to the tort claim, be undiscoverable (e.g., the insurer's claim file)'").

Given the Court's decision on Disney's motion to dismiss, however, the Court denies AAIC's motion to sever and to stay discovery without prejudice.  Since the Court has dismissed both claims against Disney for lack of personal jurisdiction, the claim against AAIC has been effectively severed from those against Disney.  The Court may consider a renewed motion to stay discovery in connection with the initial scheduling conference in the remaining case between Lewis and AAIC in this matter if Lewis elects to proceed here in this matter.

## VI. Conclusion

For the foregoing reasons, the Court GRANTS Disney's motion to dismiss, D. 15, without prejudice, and DENIES AAIC's motion to sever and stay, D. 11, also without prejudice.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge